IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| TEYON MALIK HERRING, | |
| Petitioner, | CIVIL ACTION NO.: CV508-025 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No.: CR504-11) |
| Respondent. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Teyon Malik Herring ("Herring"), filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. The Government ("Respondent") has filed a Response. For the reasons which follow, Herring's Motion should be **DENIED**.

## STATEMENT OF THE CASE

Herring was indicted by a federal grand jury on one count of possessing with intent to distribute 12 kilograms of cocaine hydrochloride, in violation of 21 U.S.C. §841(a)(1). (CR504-11, Doc. No. 5). Herring pled guilty to that charge on November 23, 2004. (Id., Doc. No. 28). Herring filed a motion to withdraw his guilty plea on September 26, 2005. (Id., Doc. No. 44). After an evidentiary hearing, the district court denied Herring's motion. (Id., Doc. No. 50). On December 19, 2005, the Honorable William T. Moore, Jr. sentenced Herring to 121 months' imprisonment, five years' supervised release, and imposed a special assessment of $100. (Id., Doc. No. 52). Herring filed an

appeal, and the Eleventh Circuit Court of Appeals affirmed his conviction. United States v. Herring, 216 Fed. Appx. 927 (11th Cir. 2007).

In the instant Motion, Herring generally asserts that attorney Clyde Taylor ("Taylor") provided ineffective assistance of counsel by failing to conduct a reasonable investigation into the facts of his case, failing to proceed with a meritorious suppression motion, inducing him into entering a guilty plea by intentionally misrepresenting facts, and failing to protect his assets. (Doc. No. 1, p. 14). Herring further asserts that his conviction was obtained by the use of evidence gained pursuant to an unlawful arrest and an unconstitutional search and seizure. (Id. at 4-5).

## DISCUSSION AND CITATION TO AUTHORITY

I. **Herring knowingly and intelligently pled guilty.**

Herring contends that Taylor failed to conduct a reasonable pretrial investigation. Herring further contends that he did not knowingly plead guilty because Taylor intentionally misrepresented facts to him in order to induce his plea. (Doc. No. 1, p. 4). Herring concedes that a matter decided adversely to a defendant on direct appeal cannot generally be re-litigated under § 2255, but asserts that this case presents exceptional circumstances and can be considered under the Court's discretionary powers. (Doc. No. 16, p. 2). Herring further asserts that in determining that he made a knowing, voluntary waiver of his rights, the previous courts did not address the issue that it was Taylor's ineffective assistance of counsel that led him to unknowingly plead guilty. (Id. at 2-3).

Respondent contends that Herring's motion to withdraw his guilty plea was denied on direct appeal. Respondent further contends that the appeal addressed

Herring's claims that his guilty plea was unknowing because he did not receive reasonably effective assistance of counsel and that his plea was improperly induced by counsel. (Doc. No. 5, p. 4). Respondent asserts that Herring is barred from raising that issue here because it was litigated on direct appeal. (Id. at 5) (citing Mills v. United States, 36 F. 3d 1052, 1056 (11th Cir. 1994)).

A district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under § 2255, unless there has been an intervening change in the law. Id.; Davis v. United States, 417 U.S. 333, 342 (1974). The mere re-characterization of a claim that was brought on direct appeal does not merit a district court's review on a different, yet previously available, legal theory. Nyhuis, 211 F.3d at 1343.

The Eleventh Circuit Court of Appeals previously considered Herring's contention that Taylor's ineffective assistance of counsel led him to unknowingly and unintelligently plead guilty. See Herring, 216 Fed. Appx. at 928. The Eleventh Circuit found that the district court's denial of Herring's motion to withdraw his guilty plea was not unreasonable and affirmed his conviction. See Id. at 929. The Eleventh Circuit rejected Herring's contention that his guilty plea was unknowingly and unintelligently entered. Herring has not shown that there has been an intervening change in law which would require this Court to entertain his present claims. Accordingly, Herring is not entitled to his requested relief on this issue. See Nyhuis, 211 F. 3d at 1343.

II. **Herring is procedurally barred from contesting the use of evidence obtained pursuant to his arrest and the subsequent search.**

Herring asserts that his conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure and an unlawful arrest. (Doc. No. 1, pp. 4-5). Herring contends that he informed Taylor that certain officers involved with his case, including Officer Stacy Williams, had concerns about the legality of the search and had information that could be helpful to his defense. (Id. at 8-9). Herring further contends that Taylor informed him that he did not want to interview any witnesses because if he discovered this information after a trial he could use it to get a new trial or withdraw a guilty plea. Herring asserts that Taylor informed him the night before the scheduled suppression hearing that the government had just revealed the existence of a videotape that purported to show admissions and his consent to the search. Herring further asserts that he later discovered that the existence of the videotape was revealed in the initial discovery. (Id. at 9). Herring contends that Taylor failed to review the government's discovery materials in sufficient time to prepare for the suppression hearing. (Id. at 9-10). Herring asserts that Taylor refused to have the tape analyzed by an expert. (Id. at 11). Herring further asserts that Taylor refused to pursue his suppression motion even though it had merit. (Id. at 14).

Although § 2255 does not specifically include a statutorily mandated exhaustion of remedies requirement before a writ of habeas corpus petition can be brought, federal courts have created an exhaustion requirement. See Reed v. Farley, 512 U.S. 339, 354 (1994). A § 2255 petition cannot be a substitute for a direct appeal; therefore, a petitioner is procedurally defaulted from seeking habeas relief on claims that he could have raised on direct appeal. Id. If a petitioner has not raised an available issue on

direct appeal, he has waived his right to appeal. This procedural default can be overcome by showing "'cause'" for the waiver of a direct appeal and "'actual prejudice resulting from the alleged. . . violation.'" Id. (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)). "Constitutionally ineffective assistance of counsel can constitute cause" to overcome a procedural default. Holladay v. Haley, 209 F.3d 1243, 1254 (11th Cir. 2000). However, such a claim must have merit. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

A claim that a defendant did not receive effective assistance of counsel involves the right to counsel which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. To be successful on an ineffective assistance of counsel claim, the defendant must satisfy a two-part test: (1) his counsel's performance was deficient, falling "below an objective standard of reasonableness"; and (2) the deficient performance prejudiced his defense so badly that there is a reasonable probability that it impacted the result. Id. at 687-688; Quince v. Crosby, 360 F. 3d 1259, 1265 (11th Cir. 2004). When reviewing the level of performance provided by counsel, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689.

Herring failed to raise on direct appeal the general assertions that he was convicted by the use of evidence obtained pursuant to an unlawful arrest and illegal search and seizure, and is procedurally barred from raising those issues in a § 2255

action unless he can show cause. See Dasher v. U.S., 2008 WL 785563 *2, 4 (M.D. Fla. 2008) (defendant ordinarily barred from bringing a § 2255 action raising claims not raised on direct appeal that his conviction was obtained by the use of evidence obtained pursuant to an unlawful arrest or illegal search and seizure). The Court will now examine whether Taylor's allegedly ineffective assistance provides cause to overcome this procedural bar.

A. **Herring did not receive ineffective assistance of counsel as a result of Taylor's alleged failure to investigate and call certain witnesses.**

Respondent contends that Herring cannot show deficient performance or resulting prejudice from Taylor's alleged failure to investigate and call certain witnesses. (Doc. No. 5, p. 18). Respondent further contends that sound tactical decisions within the range of reasonable competence are not vulnerable to collateral attack. (Id.) (citing Weber v. Israel, 730 F.2d 499, 508 (7th Cir. 1984)). Respondent asserts that the record refutes Herring's claims that his counsel refused to interview or call witnesses. (Doc. No. 5, p. 19). Respondent further asserts that the AUSA informed the Court at sentencing that the FBI found Herring's claims that he had been falsely arrested to be baseless. Respondent contends that because Taylor was hamstrung, by both Herring's refusal to divulge the source of his alleged information and by his own doubts about Officer Williams' information, Herring cannot now claim that his counsel was ineffective for failing to call witnesses and pursue a suppression motion. (Id. at 20).

Herring asserts that Taylor provided ineffective assistance of counsel by withdrawing the motion to suppress and misleading him into pleading guilty without first investigating the named officers in the DEA-6 report and calling Officer Williams to testify. (Doc. No. 16, p. 14). Herring further asserts that Taylor did not hire a private

investigator until well after he pled guilty. (Id. at 10). Herring contends that Taylor testified that Officer Williams was on the DEA-6 report and that he had mentioned Officer Williams' name in a May 12, 2004, letter. (Id. at 10-11). Herring further contends that Taylor later testified that he relied on the DEA-6 report as facts and did not perform any independent research prior to the suppression hearing. (Id. at 11). (Id. at 14).

Taylor's alleged failure to investigate and call certain witnesses was not ineffective assistance of counsel. It is questionable whether Taylor's decision not to interview the named officers was deficient given his testimony that he had reviewed reports of what the officers were going to say and that in his twenty-seven years of practicing law it was his experience that in a federal case the officers would repeat what was in the DEA-6 reports. (CR504-11, Doc. No. 56, pp. 74-75). Even assuming Taylor's performance was deficient, Herring cannot show that Taylor's alleged failure to investigate the named officers prior to the suppression hearing prejudiced his defense so badly that there is a reasonable probability that it impacted the result. See Strickland, at 687-688; Quince, 360 F. 3d at 1265. Herring was not prejudiced because even if Taylor had investigated the named officers prior to the suppression hearing, he would still have had to continue the hearing due to the recently discovered videotape that purportedly contained Herring's consent to the search. As Herring noted in his Reply (Doc. No. 16, p. 11), Taylor believed that the plan was to explore the possibility of pleading guilty or going forward with a new motion to suppress, depending on what was on the videotape. (CR504-11, Doc. No. 42, p. 79). To the extent that Herring alleges that Taylor was ineffective due to his failure to call witnesses, particularly Officer Williams, this allegation is without merit. Taylor testified that there was nothing that

would have kept him from calling helpful witnesses and that he never told Herring that he would not call witnesses. (Id. at 71, 73, 91, 92). Taylor subsequently hired a private investigator to interview Officer Williams and had serious misgivings about the information provided by Williams because he felt that Williams probably had just not seen some of the evidence observed by other officers and Williams refused to provide a taped statement to the private investigator. (Id., Doc. No. 56, pp. 93, 95). Taylor noted that he has concerns any time a witness does not want to give a taped or written statement under oath. (Id. at 98). The decision of whether to call a witness is a strategic decision. Waters v. Thomas, 46 F. 3d 1506, 1518-19 (11th Cir. 1995). A strategic decision amounts to ineffective assistance of counsel only "if it was so patently unreasonable that no competent attorney would have chosen it." Adams v. Wainwright, 709 F. 2d 1443, 1445 (11th Cir. 1983); Dingle v. Sec'y for Dep't of Corr., 480 F. 3d 1092, 1099 (11th Cir. 2007). Here, Herring cannot show that Taylor's decision not to initiate a new motion to suppress and call Officer Williams to testify was so patently unreasonable that no competent attorney would have chosen it given Taylor's misgivings regarding the reliability of Officer Williams' testimony. See Adams, 709 F. 2d at 1445.

**B.    Taylor's failure to review the videotape prior to the suppression hearing was not ineffective assistance of counsel.**

Respondent contends that Herring cannot show deficient performance or prejudice for Taylor's alleged failure to review the videotape prior to the scheduled suppression hearing. Respondent further contends that Herring did not hear his admissions or consent to the search on the videotape because it did not record the contested part of the search or what was going on outside the patrol car. Respondent

asserts that evidence of Herring's consent was manifested elsewhere in the record. (Doc. No. 5, p. 21).

Herring contends that the videotape was used against him by Taylor to mislead him into withdrawing the motion to suppress and pleading guilty. Herring further contends that the videotape did not contain any admissions. (Doc. No. 16, p. 15). Herring asserts that Taylor's assistance was ineffective because he relied on the DEA-6 report regarding the alleged videotaped confession and advised him to withdraw his motion to suppress and plead guilty without first reviewing the tape. Herring further asserts that he would have proceeded with his motion to suppress and not pled guilty if he had known the contents of the videotape prior to entering his guilty plea. (Id. at 16).

Herring's contention that Taylor was ineffective for relying on the DEA-6 report and not reviewing the videotape before advising him is without merit. Taylor's advice to continue the hearing until after the videotape could be reviewed did not fall below an objective standard of reasonableness. See Strickland, 466 U.S. at 687-688; Quince, 360 F. 3d at 1265. As Taylor had not yet received a copy of the videotape, the DEA-6 report was the only description of the videotape's contents that he had access to prior to the hearing. Thus, it was not unreasonable for him to recommend continuing the hearing until he could review the videotape. As Herring notes in his Reply (Doc. No. 16, p. 15), Taylor advised Herring that "it wouldn't be wise to go forward with the motion at this time" because if the tape reflected his consent, he "would be caught in a lie and be held, you know, with perjury." (CR504-11, Doc. No. 56, p. 15). Herring's further assertion that he would not have pled guilty if he had known the contents of the videotape is also without merit. To show prejudice, Herring must show that there is a

reasonable probability that, but for Taylor's alleged errors, Herring would have insisted on going to trial and not pled guilty. See Gardner v. U.S., 2009 WL 537506 *7 (M.D. Ga. 2009) (holding that the second prong of Strickland focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process). Herring asserts in his § 2255 motion that he viewed the videotape approximately two weeks after August 10, 2004. (Doc. No. 1, p. 4). Herring did not plead guilty until November 23, 2004. (CR504-11, Doc. No. 28). It is clear from both Herring's own statements and the record that he was aware of the contents of the videotape prior to pleading guilty. Thus, Herring is not entitled to his requested relief because he cannot show that Taylor's alleged deficient performance affected the outcome of the plea process. See Gardner, 2009 WL 537506 at *7.

C. **Taylor's strategic decision not to pursue the motion to suppress was not ineffective assistance of counsel.**

Respondent notes that the government's defense to Herring's motion to suppress was that he lacked standing to contest the search of the property owned by his brother, the police officers observed drugs in plain view in the driveway, and he consented to the search of the vehicle. Respondent asserts that because Herring was present and acquiesced when Taylor withdrew the motion at the hearing, he cannot now argue that his counsel was ineffective for failing to pursue it. Respondent contends that Herring's motion to suppress ultimately lacked merit and therefore he cannot claim he was prejudiced by Taylor's failure to pursue it. (Doc. No. 5, p. 22).

Herring asserts that Respondent's contention that he acquiesced to withdrawing the motion to suppress ignores the fact that Taylor convinced him to withdraw the motion by intentionally misinforming him. Herring contends that Taylor did not continue

the hearing in order to investigate and confirm what was on the videotape. Herring further contends that Taylor was not concerned about whether the allegations in the DEA-6 report were true, Taylor merely wanted to ensure that he withdrew the motion and pled guilty. (Doc. No. 16, p. 18). Herring asserts that Respondent's contention that his motion to suppress lacked merit is at odds with the facts of the case. Herring contends that he legally resided at the residence at the time of his arrest. Herring further contends that Officer Williams stated that none of the police officers involved in his arrest saw anything near or around the vehicle that would have given them probable cause to search the vehicle or the residence. Herring asserts that Taylor provided ineffective assistance of counsel by intentionally misleading him to withdraw the motion to suppress. (Id. at 19).

Herring's assertion that Taylor was ineffective for withdrawing the motion to suppress is unavailing. Herring's initial assertion that Taylor intentionally misled him in order to convince him to withdraw the motion to suppress is at odds with his earlier contention that Taylor was ineffective for relying on the DEA-6 report's description of the contents of the videotape. In order to intentionally mislead Herring, Taylor would have had to been aware of the contents of the videotape and that his representation to Herring of those contents was false. Instead, Taylor had not yet viewed the videotape and advised Herring based upon what was purported to be on the videotape. While the purported content of the videotape ultimately proved to be incorrect, it does not follow that Taylor intentionally misled Herring. The ultimate merit of Herring's motion to suppress is irrelevant to the resolution of this issue. Taylor made a strategic decision not to pursue a motion to suppress. "A strategic decision to pursue less than all

plausible lines of defense will rarely, if ever, be deemed ineffective if counsel first adequately investigated the rejected alternatives." Adams, 709 F. 2d at 1445 (citing Washington v. Strickland, 693 F. 2d 1243, 1253-54 (5th Cir. Unit B 1982). Even if a strategy appears to have been wrong in retrospect, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. Washington, 693 F. 2d at 1254. As discussed supra, Taylor's decision to table the original motion to suppress was reasonable. Herring cannot show that Taylor's failure to pursue a new motion to suppress after viewing the videotape was so patently unreasonable that no competent attorney would have chosen it. See Washington, 693 F. 2d at 1254. Taylor previously investigated the motion to suppress and felt that it was a "loser" given Herring's lack of standing and the discovery of cocaine in plain view in a common area. (CR504-11, Doc. No. 56, pp. 74-75). Taylor also hired a private investigator to interview Officer Williams and had misgivings about the information produced by that interview. (CR504-11, Doc. No. 56, pp. 93, 95). Taylor's strategic decision not to pursue a suppression motion was reasonable given that he had previously evaluated the success of the motion to be unlikely and had not discovered any new evidence to change that opinion. Accordingly, Taylor's strategic decision to not pursue a motion to suppress was not ineffective assistance of counsel because he adequately investigated a suppression motion before deciding not to pursue it. See Adams, 709 F. 2d at 1445.

Herring is procedurally barred from contesting the use of evidence obtained pursuant to his arrest and subsequent search. See Reed, 512 U.S. at 354; Dasher, 2008 WL 785563 *2, 4; Nyhuis, 211 F.3d at 1344.

### III. Remaining claims

Herring's third claim is that Taylor generally provided ineffective assistance of counsel. (Doc. No. 1, p. 4). Herring's accompanying affidavit contains his remaining allegations of ineffective assistance of counsel. (Id. at 7-15). The undersigned will address each of these individually.

#### A. Taylor's alleged failure to communicate information to the probation officer did not prejudice Herring.

Herring asserts that Taylor failed to forward information concerning his living arrangements to his probation officer and this became an issue at his bond hearing. (Doc. No. 1, p. 7). Respondent contends that Herring cannot show that he suffered any prejudice as a result of this assertion because he was released on bond following his initial appearance and remained on pretrial release until he was remanded into custody at sentencing. (Doc. No. 5, pp. 23-24).

The record reveals that Herring was released on bond following his initial appearance. (CR504-11, Doc. No. 11). Herring is not entitled to his requested relief because even assuming Taylor's performance was deficient, Herring is unable to show that he was prejudiced by such performance. See Strickland, 466 U.S. at 686; Quince, 360 F. 3d at 1265.

#### B. Herring was not prejudiced by Taylor not being a member of the Georgia bar.

Herring asserts that Taylor was ineffective because he was not a member of the Georgia bar and was therefore unable to practice law in Georgia. (Doc. No. 1, p. 8). Respondent contends that this assertion is without merit because Taylor received permission to practice pro hac vice in Herring's criminal case. (Doc. No. 5, p. 24).

Herring's contention that Taylor provided ineffective assistance of counsel because he was not a member of the Georgia bar is unavailing. Taylor was granted permission by this Court, pursuant to Local Rule 83.4, to practice pro hac vice in Herring's criminal case. (CR504-11, Doc. Nos. 7, 19). Thus, Herring is unable to show that he suffered any prejudice because Taylor was not a member of the Georgia bar. See Strickland, 466 U.S. at 686; Quince, 360 F. 3d at 1265.

### C. There is no evidence that Herring's criminal file was sealed.

Herring contends that Taylor provided ineffective assistance of counsel by having his case sealed. (Doc. No. 1, pp. 11-12). Respondent asserts that Herring's contention is without merit because there is no indication in the docket sheet that Herring's file was sealed after the indictment in the case was returned. (Doc. No. 5, pp. 24-25).

Herring's contention that Taylor's assistance was ineffective because he had the criminal case sealed is without merit. Herring's criminal docket sheet is devoid of any indication that his file was sealed. (CR504-11). Further, the undersigned is unable to discern how sealing Herring's case would have prejudiced his defense so that there is a reasonable probability that it impacted the result. See Strickland, 466 U.S. at 686; Quince, 360 F. 3d at 1265.

### D. Taylor's alleged bad advice concerning the "safety valve" sentencing law was not ineffective assistance of counsel.

Herring asserts that after informing Taylor that he wished to withdraw his guilty plea, Taylor advised him that he would be eligible for the safety valve provisions of 18 U.S.C. § 3553(f), which would give him a break on sentencing. Herring further asserts that he was not eligible for the safety valve sentence reduction and Taylor should have been aware of that fact. (Doc. No. 1, p. 13).

Respondent contends that Herring's assertion is without merit. Respondent asserts that Herring indicated that he understood when the Court advised him at his Rule 11 hearing that it was not bound by any estimate his attorney might have given him regarding his sentence. Respondent further asserts that Herring also understood that his criminal history would impact the sentence imposed by the Court and that he would not be able to withdraw his guilty plea if his sentence was more severe than his attorney estimated. Respondent notes that the Court further advised Herring that he was facing a minimum ten year statutory mandatory sentence. (Doc. No. 25, p. 25). Respondent further notes that Herring stated that Taylor had not told him the exact sentence that would be imposed in his case. (Id. at 25-26).

Even assuming that Taylor advised Herring that he would be eligible for the safety valve sentence reduction, Herring was not prejudiced by this advice. Herring cannot show that Taylor's advice as to the projected sentence impacted his decision to plead guilty because he had already pled prior to receiving that advice. To the extent that Herring alleges that Taylor's advice affected his desire to withdraw his guilty plea, Taylor's allegedly deficient performance did not impact the result of Herring's criminal case because Herring later entered a motion to withdraw his guilty plea, which the Court denied. (CR504-11, Doc. No. 50). Herring cannot show that Taylor's allegedly deficient performance prejudiced his defense so badly that there is a reasonable probability that it impacted the result. See Strickland, 466 U.S. at 686; Quince, 360 F. 3d at 1265.

**E.    Herring was not prejudiced by Taylor leaving open the possibility that he could cooperate in the future.**

Herring asserts that Taylor made a deal with the prosecution to withdraw the suppression motion in exchange for the opportunity to cooperate with the government in

the future. (Doc. No. 1, p. 13). Respondent contends that while Herring's plea agreement contained a cooperation provision, he indicated that he understood it when the Court explained it to him. (Doc. No. 5, pp. 26-27).

Herring asserts that this ineffective assistance of counsel claim stems from the agreement Taylor made, without his knowledge, to withdraw the motion to suppress and plead guilty in exchange for a future opportunity to cooperate with the government. Herring further asserts that Taylor harassed him to cooperate with the government. Herring contends that he specifically informed Taylor that he would not cooperate with the government. (Doc. No. 16, p. 23). Herring further contends that Taylor did not fulfill his obligation to subject the prosecution's case to a meaningful adversarial testing. (Id. at 24) (citing United States v. Cronic, 466 U.S. 648 (1984)).

Taylor's actions at the suppression hearing were reasonable. Taylor testified that he was approached by the prosecution at the hearing and informed that if he proceeded with the motion, he was "basically...going to burn all bridges" and the government was going to withdraw any opportunity for Herring to cooperate in exchange for a sentence reduction. (CR504-11, Doc. No. 56, p. 77). Taylor further testified that he felt that the motion to suppress was a "loser" prior to the hearing because Herring did not have standing and drugs were observed in plain sight by the police officers. (Id. at 74-75). Taking into consideration that Taylor was going to have to continue the hearing to review the newly discovered videotape anyway, his decision to withdraw the motion to suppress was reasonable because he was preserving Herring's opportunity to cooperate in exchange for something he was already going to do. Herring cannot show that he was prejudiced by Taylor's alleged deal with the prosecution. With regard to a

motion to suppress, the deal would not prevent Herring from pursuing a new suppression motion at a later date if facts arose to warrant such motion. Herring also cannot show that he was prejudiced by Taylor indicating to the Court that Herring wanted to plead guilty because, as Taylor noted, there was nothing definite or binding about that statement and Herring could have changed his mind and not pled guilty. (Id. at 82). Accordingly, Taylor did not provide ineffective assistance of counsel by withdrawing the motion to suppress and indicating to the Court that Herring desired to plead guilty because Herring cannot show that Taylor's performance was deficient or that Taylor's allegedly deficient performance prejudiced his defense so badly that there is a reasonable probability that it impacted the result. See Strickland, 466 U.S. at 686; Quince, 360 F. 3d at 1265.

**F.     Herring is unable to seek redress for his claims regarding the defense of his seized property through § 2255.**

Herring contends that Taylor hired another attorney to handle the defense of the seizure of his property. Herring further contends that all of his property was forfeited because no defensive pleadings, motions, or other forms of defense were raised. (Doc. No. 1, p. 13).

Respondent asserts that there were no criminal or civil judicial forfeitures in Herring's criminal case. Respondent further asserts that the judgment and commitment order contains no forfeiture provisions. (Doc. No. 5, p. 27). Respondent notes that $9,500 in cash was seized by the DEA on the day of Herring's arrest. Respondent contends that the DEA proceeded to administratively forfeit the $9,500 following publication and notice. Respondent further contends that Herring was notified about the administrative forfeiture while incarcerated at the Coffee County Jail, as was Sharon

James at her law firm.[1] Respondent asserts that neither Herring nor James filed any petitions or claims to the seized money. Respondent contends that Herring's § 2255 motion suggests no legitimate claim he might have to the money. Respondent further contends that it is difficult to fathom any legitimate claim Herring would have to the money, as the PSI states that he had only recently graduated from college and had been unemployed since 2002. (Id. at 28). Respondent asserts that the Court lacks jurisdiction over Herring's challenge to the handling of his property because the forfeiture proceedings were not part of his sentence. Respondent further asserts that this claim would be more appropriately brought pursuant to Fed. R. Crim. P. 41(g). (Doc. No. 5, p. 29).

Herring is unable to seek relief through § 2255 for his contentions that Taylor was ineffective for failing to protect his assets in the administrative forfeiture proceedings. § 2255 authorizes Herring to assert a claim that he should be released on the ground that the sentence was imposed in violation of the Constitution or laws of the United States; that the Court was without jurisdiction; that the sentence exceeded the maximum authorized by law; or that the sentence otherwise was subject to collateral attack. 28 U.S.C. § 2255(a). Here, Herring is attacking Taylor's allegedly deficient performance in an administrative forfeiture proceeding. Nowhere does § 2255 authorize collateral attacks on civil administrative forfeitures. See Van Lang v. St. Lawrence, 2006 WL 1653630 *1 (S.D. Ga. 2006) (citing Dawkins v. United States, 883 F. Supp. 83, 85 (E.D. Va. 1995)). Herring may have remedies elsewhere for Taylor's alleged mishandling of the administrative forfeiture, but not under § 2255. See U.S. v. Irvin, 2009 WL 88537 *5

---

[1] James, a former professor of Herring's at Florida A&M, was contacted by Herring's family the day of his arrest because they did not have anyone to represent him. James testified that she referred Herring's case to Taylor.

(E.D. Ark. 2009) (holding that because § 2255 affords relief only to a prisoner claiming the right to be released, the Court was unable to reach petitioner's § 2255 claim that his attorney provided ineffective assistance of counsel in connection with property seized by the DEA).

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Herring's Motion to Vacate, Set Aside, or Correct his Sentence (Doc. No. 1), filed pursuant to 28 U.S.C. § 2255, be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 30th day of June, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE